SYSTEMS, 1012-1092, Mr. Abel, when you, ah, Abel. Good morning, owners, David Abel, on behalf of the Board of Trustees, and on behalf of AVID. This is also the same, ah, client that was just involved in the prior matter, which you just heard. Um, before we start, Judge Bryce, the last time I was here, I think you asked me the difference between whether I'd hire an extraordinary or exceptional law clerk, so I'm not sure which one that category falls into, but, ah, I think probably I'm both of them on, ah, on his standpoint, so, um, this is a case where we get to the issue of what happens in the patent office on a claim construction versus what was part of the appeal here, what happens in the district court on a claim construction. In the patent office, this case comes up off of a re, off of a ex parte re-examination. In the ex parte re-examination, the requester put in as a primary reference as against, ah, the unalterable data and alterable data elements of the claim, a single reference. The, um, the Baldwin reference. That reference does not teach unalterable data. It does not teach a means for providing unalterable data. In order to find a, in order to reject the claims, and essentially all of the independent claims have both unalterable data, a means for providing unalterable data, and a means for providing alterable data. In order to reject all of the claims, there was a finding by the patent office and then by the board that unalterable data was data that could not readily be altered. But the data mechanism... But they use a broadest reasonable interpretation, right? Well, they used a broadest reasonable interpretation, and I guess I would put it, they, that, that's their claim that they can use a broadest reasonable interpretation, which is a, an expedient for the patent office to use. Of the... Also, I recognize that you can amend your claims in, during a re-examination. Under the concept that, yes, you can amend your claims during a re-examination. Once it gets to the board level, then I'm not necessarily... For example, if you had not had a means plus function claim, you could have amended it as such. Right. And with, in fact, there was one claim that was changed from being a means plus function claim to being an apparatus claim. But the, but the real point is there was no need from my standpoint during the course of re-examination and even the re-examination to amend the claims because the reference that was being applied, the Baldwin reference which is being applied, does not teach unalterable data. All the data in Baldwin is alterable, and it's alterable without doing anything to the tag other than, if you need to, go in and shine a light on it. And that light shining on it then allows all the data to be reprogrammed. So it is readily reprogrammable. All of the data in Baldwin is readily reprogrammable. That is exactly the type of data which is the alterable data in the 017 patent. Plus what a reference teaches is question of fact. Correct. We owe substantial evidence deference to the Patent Office on that. But they have to correctly review what it is. And they've admitted that even, even the solicitor's brief even admits that all of the data in Baldwin can be changed. So there's no dispute about that. That's a fact. All of the data in Baldwin can be changed. Baldwin teaches two types of memories. Is your definition of unalterable, without using just a synonym for unalterable if you can do so, does it suggest that the data cannot be changed, period, or that the limitations on the ways in which it can be changed are so severe that it is as a practical matter in the ordinary use to which the device will be put will not be changed and not be capable of being changed? Essentially, those two are the same from my standpoint. It can't be changed without destroying the device. That's unalterable data. The unalterable data... Let me ask you a specific question. Would a bitlock EEPROM be unalterable? A bitlock EEPROM as long as you could change the bit. It wasn't a blown fuse EEPROM. A bitlock EEPROM that you could change, for example, in the Baldwin reference by shining a light on the locking mechanism, that would be alterable. But if it was a blown fuse type of EEPROM so that you could not change it anymore once it's done... Without replacing the blown element. Exactly. Then that would be unalterable. But you could do it by replacing. In other words, reconstruction would be a form of... You would accept reconstruction as a form of change that would be permissible under your definition. Well, it would not be... As opposed to reprogramming. In a practical matter, you couldn't do it because the chip, which is tiny, is encased in plastic and it's done. So you'd essentially have to shave off all the plastic and get down to it. That's not what we're talking about. Once that permanent data, that unalterable data is in there, absent going in and basically carving up the chip and trying to redo it and then put it together again, a reconstruction of the entire thing, which is far more expensive than buying another $0.23 chip or a $2 chip. To do a reconstruction like that would cost far more than just buying a new chip. That's the importance of the unalterable data here for the context of the RFID business was so that they could prevent manufacturers or customers from duplicating other customers' tags. For example, and if I may give you an example, one of the concepts behind this whole thing at the outset was, if you're going to use an RFID tag in a million-dollar racehorse, and that million-dollar racehorse is insured by a policy, and the policy is touched to, okay, you can identify the horse by the tag. If you can put a duplicate tag into another horse that dies and take your million-dollar horse and ship him off seas, and you can take your reader up to the tag and say, okay, this was the horse giving me my million-dollar policy, there's no way to stop that, okay, without having a mechanism to make sure that certain data in the tag, certain pages in the field, so to speak, cannot be changed so that you could basically say, okay, I want to make sure that that's my tag, that that's the tag I wrote the million-dollar policy on. You'd want to be able to read that data that can't ever be changed. And by reading that data, say, okay, I know for a fact that that is the proper tag. Not that it's a tag that had all of the data changed, okay? In the Baldwin example, the railcar example, in the railcar example, one of the issues right now for this country is obviously a terrorism issue. And you take railcars and you want to be able to positively track them. In the Baldwin example, could you change all of the data on a railcar to make it exactly the same as three or four other railcars? The answer to that is yes, you could. That's not unalterable data. There's no mechanism to prevent you from duplicating the exact same data on six different railcars, and by that mechanism, flip a railcar through that you didn't want to. That's the issue. Was this patentless direction? I understand. I'm far from even knowledgeable in this field, but I'll look to you for guidance here. If I understand correctly, the advance of the EPROM was that it was reprogrammable. The precursor devices were not. They were read-only, and hence the name. But you could program them, but you're stuck, and they were not alterable once you had the It seems sort of odd to be saying at this point that, well, the great innovation of this patent is that we have discovered the utility of technology that preceded the EPROM, even though the Baldwin reference incorporates the EPROM. The prior technology had a tag with all of the memory that was done at the time of manufacture, so like a prompt. All of the memory was essentially fixed, or you had one that had all of the memory essentially open. You didn't have the two together, okay? You didn't have a partial memory that was fixed and a partial memory that was unfixed. What this patent recognized is that there was a substantial benefit to putting those two things together in a single tag so that the manufacturer or the client could know for a fact that it's their tag because there's a certain amount of data that they know exactly where it came from always, and they can put their whole number stream after that to say, okay, this is this particular number. This is this particular pet. This is this particular rail car or set of blue jeans. And so that's what the benefit of it was, and it's been a benefit that basically has been utilized. That's one of the issues that the prior case was about is the fact that companies have adopted the technology. But Baldwin had that idea, right? The Baldwin 581 said there's an advantage to having fixed and changeable. No, the Baldwin didn't have any fixed. Baldwin had a memory that had to have a battery, and that was a volatile memory. So if you lose the battery, it was all changed. The person, maybe, I mean, Baldwin talks about fixed. Now, it may be using the term fixed in a way that is not as fixed as your definition, but it does seem in the passage I'm looking at at the bottom of column one, the present intervention provides an electronic identification system that can store both fixed and changing information. That sounds like a pretty good description of what you were just describing your invention as having contributed. Baldwin says that only in the context of fixing it for a certain period of time until you want to change it. So your invention really wasn't this great idea of incorporating both fixed and changing information, but rather, it seems to me, by your own description, a rather small change in the sense that it's not just going to be fixed, it's going to be really fixed. It's unalterable. Unalterable. So that's the difference between Baldwin and your invention, correct? That is the primary difference, but Baldwin doesn't teach fixed in the concept of being unalterable. That's the big point. Baldwin, if you program an EEPROM, and you put it in there, and the same type of information for the alterable data in the tag, the AVID tag of the patent, remember, because the claims have both an unalterable element and an alterable element. For the alterable element, you can use an EEPROM, and you can put the information in there, and it stays in there, and it stays in there until you want to reprogram it. That's the exact same type of alterable data that's in Baldwin. Baldwin's alterable data stays there until you go in, shine a light on it, reprogram it. There is no fixed data in Baldwin. Can I ask a process question? Sure. One of the things that puzzled me about this case was, comes out of the concurring opinion on the rehearing, which is why wasn't this claim processed as a 112.6 claim from the get-go? You mount that argument in your brief, saying that that was an error. I'm confused in my head. Do we get to exactly the same place? If we're done as a 112.6 claim, then we would look at the spec, and we would find the structure that you feel is associated with the means limitation, and then we'd be asking whether or not Baldwin teaches an equivalent, right? Right. That would be the question. Is this discussion you've been having with Judge Bryson exactly that same discussion? Not exactly, except if you're trying to figure out if the EEPROM of Baldwin is an equivalent to the programmed PROM. Weren't you getting awfully close to that? Yes. I mean, what I'm trying to ask is whether it was harmless error, if you will, for the examiner to not have fulfilled its Henry Donaldson duties here. It's not. From my perspective, it was always a 112.6 discussion, even if you go back to the original re-examination request in the reply brief. The reply brief of the requester says this is a 112.6 paragraph. I mean, I'm asking what I think is a harder question, at least it is for me, because in my research, I'm going to ask the solicitor about this. I found well over a dozen cases that are exactly like this, where the board did what Torzon said you should do. Cases in which 112.6 wasn't raised clearly before the examiner, wasn't raised in the My question is, would that be a futile exercise here in the light of the conversation you've had with Judge Bryson? No, it wouldn't be a futile exercise, because if you go through that process and you say, OK, what is the 112 paragraph 6 structure within the specification that supports the claim element, then you would find that as being the laser PROM and the fusible link diode. And you'd say, is that taught in the Baldwin reference? I know it's not taught in the builder reference, so Baldwin is not an anticipating reference. Well, you would ask whether or not what Baldwin taught was a functional equivalent. And if you ask that question, then it comes up in the functional equivalent. The answer to that is no, it's not a functional equivalent, because it's not unalterable. The information in Baldwin was always alterable. So it's not the functional equivalent. So that brings me back to where I were. I mean, you started off this conversation as if it wasn't a means plus function claim at all. It was just a straight claim, and you were testing the examiners and the board's interpretation of the scope. And you said Baldwin doesn't qualify, because it's unalterable. Baldwin doesn't qualify because it's unalterable, and it doesn't teach the types of alterable data that was the subject of the means plus function claim limitations that were always at issue in the reexamination. Your time has been consumed, Mr. Abel. We'll give you two minutes for a break. Thank you, sir. Mr. Rosillo. May it please the court. The board properly addressed the very narrow claim construction issue before it and found that the Baldwin 581 reference teaches unalterable data under the broadest reasonable interpretation. The board properly identified substantial evidence within Baldwin 581 and the secondary references to anticipate and render obvious the claims of the 017 patent at issue here. I believe Judge Bryson was correct in pointing to the disclosure in column 1, line 61 on page 614 of the Baldwin reference, where Baldwin clearly teaches storing both fixed and changing information. Of course, that's about as good as it gets for you from Baldwin. After that, things are not nearly as firm, it seems to me. And that opens the question, as Mr. Abel was saying in response to my question, as to what fixed means. And his argument is that fixed, for purposes of Baldwin, as the rest of Baldwin explains, is really more directed towards avoiding or minimizing the risk of erasure, accidental erasure, et cetera. So it's protected, but it isn't unalterable in the sense that, as Mr. Abel said, to use his example, you couldn't change that chip on that horse no matter how hard you tried. And that is a distinction that I don't see anything in Baldwin that nails that down. I think two points. First is, with Baldwin, it does teach that the fixed data is protected from accidental erasure and erasure, but it also teaches that that data is protected from reprogramming when it's installed in, for example, a rail car. And looking at column three of the Baldwin reference, it teaches... Well, but reprogramming, under what circumstances and by whom? I mean, it's protected against remote reprogramming, but that doesn't mean the same thing as a chip that simply is unalterable in the sense that it cannot be changed without destroying the chip, right? The question really is, is there anything in Baldwin that leads us to conclude that Baldwin contemplated the latter rather than the former? I would submit that the disclosure in column three of Baldwin, both with the protect means, the light-activated switch, and also the disclosure of the remote non-contact means for programming and the pulse sequence means. When the patent speaks about both of those means, it says that you can only reprogram the non-write-protected portions of the memory when the RFID is installed in the train. So in its usual accepted use, the RFID reader, the interrogator, is not going to be able to reprogram one portion of that memory. That memory is fixed. The information in there is fixed and it's set. I think it also invites the second point... While it's on the train. You pull it off the train and you can make whatever changes you want. That's correct. When the light-activated switch has been shown on it and the protect means is disabled, you will be able to reprogram that information. That sounds like it's a bit of a stretch to get from it can't be altered until you do something to alter it versus it's unalterable. Well, that invites the question of what does unalterable mean? And I think the board and the examiner recognize that in this field of data storage, alterable and unalterable, they are always terms of degree. And what the 017, the invention of 017, it's got two types of data. It's got the alterable and unalterable data that are juxtaposed against each other. So one is more protected, one is less protected. And what Baldwin has as well, it teaches you two classes of data. One that is going to be protected and one that you can reprogram remotely readily. And so the term unalterable, you think of a tattoo as something that's unalterable, but if you work hard enough, you can change that tattoo. You can alter it. Something that's set in stone, you can carve additional things into that stone and it's not really unalterable. There is some level of degree between alterability and unalterability. And really what the crux of the 017 patent and Baldwin teaches is that you have two classes. Well, it's true that a tattoo is alterable, but I certainly wouldn't call it readily alterable. Well, that's where we are here, right? That's right. And that's why the board, in construing what alterable and unalterable is, they say it's readily alterable. That's right, but Mr. Abel is saying that what we've got here is a tattoo. And you're saying, well, it's readily alterable. I would say that what Baldwin teaches is that when the RFID tag is implemented, you have a quote unquote tattoo. You have a portion of that memory that is not reprogrammable. So you shine a light on the tattoo, in which case it's gone. Right, but you still have to do something extra to do that. You have to remove it from, you have to take it out from its ordinary use when it's installed on that train in order to change that data. Can I ask you a process question? I did a little research yesterday, and I found 10, 12 cases recently that are like this case, in which one can fairly argue that the examiner wasn't analyzing the claim under Ann Rae Donaldson, and that the appeal brief didn't present the issue clearly, if at all. Nonetheless, the board said we're bound by Ann Rae Donaldson, and when it's a means plus function claim, we have to analyze it that way. Who governs what's happening here? Why do I find a large number of cases like this in which the board kicks the eater, runs the 1-12-6 analysis itself, or kicks it back to the examiner? I would say, probably in those cases, the claim as a whole, the means plus function claim as a whole, was at issue. Here, there's very specific, very narrow claim construction question here, is what is alterable data and what is unalterable data? The AVID ID did not argue means plus function, did not argue the 1-12-6, did not argue that there's nowhere that they can point to to say that we've got... That's a fine distinction, but it's one that doesn't hold up in the way I look at the other cases. I mean, I just saw it as a process manner that in some cases, the board says, well, wait a second, we're obligated. The MPEP makes very clear that both the board and examiner are supposed to use a 1-12-6 analysis, and they didn't do it. Does the director give the orders here? Or do we rely on the board to police Henry Donaldson? I think what happens in those situations is that the board has very strict rules on how to raise issues before it. And in this case, I think the board has discretion as to whether or not looking at what the issues that were raised before it, what claim construction needs to be completed, what they need to do under claim construction. In this case, I don't think Donaldson... Are you talking about compliance with rule 41-37? That's correct. Well, the cases I found, the board said rule 41-37 had not been complied with. Nonetheless, the board took the case up and said, sent it back and said, you got to do it under 1-12-6. I think we've got a situation here where we have two judges who, under their discretion, believe that they did not need to take up the Henry Donaldson issue, and one judge who did. How does that... Is that discretion unfettered? Why do I find inconsistency in the way the board is dealing with these cases? I think it's probably a fact-by-fact situation based on the arguments that were raised by the patentee or the applicant. I mean, they drive the issues. They drive what the board is going to look at. They have to raise... Not in the dozen cases I found, the applicant wasn't advancing 1-12-6 at all. I believe in this case, the board, the members of the majority of the board took a look at the issue of alterable versus unalterable data, which is what they believed was the issue before them, and did the claim construction on those terms and came to their decision. They did not feel that they needed to go back and look at the complete means to function claim as a whole, as would be required. But the bottom line question is, what does the reference teach, right? You have to decide whether or not this reference has been advanced as an invalidated reference. That's right. Analysis would be different if it were done under 1-12-6. Not the question of what Baldwin teaches. That would still be... It's just a question of fact of what one of ordinary skill... But whether it teaches something that's an equivalent of the stated structure in the spec for the means would be a different issue. Right, but that issue wasn't before the board. The issue of what was the equivalent structure... Should have been, that's my point. Let me see if I understand the state of play with respect to the bases for the rejections. If I understand the claim, 7, 10, and 19 were rejected over Baldwin 581 on anticipation grounds only. There were a number of obviousness rejections, but those three claims were not alternatively rejected for obviousness. Is that correct? That's correct. And that was true both in the board and also at the examiner level. That's right, claims 7, 10, and 19. So if, for example, we were to conclude that a reasonably changeable... What's the language that the board used? Not readily... Not readily changeable, yeah. Not readily changeable, that's right. If we were to conclude that that is too loose and that the breadth of the claim construction there was harmful in the sense that it influenced the anticipation ruling, what would happen to those three claims? I understand what would happen to the rest of the claims that deal with obviousness. We would either send them back or we would decide that maybe in light of the obviousness holding that wasn't necessary to do so. But would those be subject to further examination under obviousness or what would procedurally be the way that would go forward? Well, I believe that all of the board members recognize that Baldwin 581 teaches the metafactual finding that Baldwin 581 teaches data that's not changeable. And I believe... Not readily changeable, anyway. But Judge Torczone in his opinion on page... A36, he notes as the majority found Baldwin teaches a memory that at least when installed cannot be reprogrammed and hence its data cannot be altered. So I think because the board has made factual findings to support a finding of anticipation even under a more strict claim construction, the claims could be held as unpatentable. Okay. Anything further, Mr. Russo? Nothing further. Any other questions for me? No, thank you. Thank you. Mr. Eagle, I'll give you two minutes rebuttal. Thank you. Thank you. I appreciate the extra time. Two issues rebuttal. Yes. On the first, on kind of the point that Your Honor was asking with respect to claims 710 and 19, I believe, recognize that Baldwin is also the anticipating reference, essentially portion of the obviousness for all of the independent claims. Oh, I understand that. And where I was going with that was just purely a procedural question of, is there a backup obviousness? There's not a backup obviousness for any of the other claims. There's not a backup obviousness that says Baldwin makes these claim elements, the unalterable data, obvious. So if we take Baldwin out of play, there's no, the examiner didn't have another reference on the table. Exactly. Actually, I wasn't clear about my question. What I meant to ask was, is that even if we assume Baldwin is in play, but we find that Baldwin is not anticipating, is it nonetheless open to the board to find that Baldwin is a one reference obviousness? No, that was never part of the rejection. That's never been suggested? No, not that Baldwin makes obvious the unalterable data element. It's always been Baldwin anticipates the unalterable data element. And I would say that the comment that the solicitor just made, that the board found that Baldwin teaches data that cannot be altered is not correct. That's a bad finding of fact, because all of the data in Baldwin can always be altered. But there are certain rejections over Baldwin 581 on obviousness. On obviousness in combination with other elements, because the other claims had additional elements which weren't in, for example, claim seven. And the other reference, the other Baldwin reference, the other Chasik reference, those were used as a combination as against the additional elements in claims, for example, claim one. Claims 159 and some others rendered held to be obvious over Baldwin alone? No. No. Okay. And I would respond a couple points on that quickly. The Baldwin on top of column three teaches very clearly that the right protected information is changeable. I don't think you have to take it off the rail car to do it. You take your light on your rail car, it's done. You know, let me go back to your response to Judge Lurie's question. And I had the same exact question. At least the board seems to think that Baldwin was a single 103 obvious reference with respect to certain of the claims, because on page three of the board's opinion, the board refers to the examiners having rejected claims 569 and 16 and 18 under 103A as being unpatentable under Baldwin 581, no second reference. That was the question. I thought that was the answer. I thought, I may be mistaken, but I think from the standpoint of the claims that were not, that included additional limitations, that with respect to the unalterable data element, Baldwin was always being applied as being anticipating the unalterable data element. They just said it teaches it, not that it makes it obvious, but it teaches that element. Right, but the fact that it's anticipating doesn't disqualify it from being a single reference obviousness. It's not, but that, yes, it wouldn't disqualify it, but then the question would be, is it obvious to change something which is alterable? And it gets to the point where the claim construction that the board essentially put on it is all of the data, both the unalterable data and the alterable data is all alterable. And by making both sets of data, the claims clearly say we have unalterable data and alterable data. By making both sets of data alterable, you've eliminated what an alterable data claim limit was. That's what the board did. It completely eliminated the unalterable data limitation from all of the claims and made all of the data alterable. Thank you, Mr. Abel. Thank you very much. Thank you, we'll take the case on revising.